```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------x
MATTHEW GOLDSICH               :
                               :
          Plaintiff,           :
v.                             :   Civ No. 3:06CV00628(AWT)
                               :
CITY OF HARTFORD; CHIEF OF     :
POLICE PATRICK J. HARNETT;     :
LIEUTENANT JOHN D. SCHMALTZ;   :
OFFICER LUIS POMA; WESTON      :
DEVELOPMENT, LLC; PRO PARK,    :
INC.; PRO PARK GROUP, LLC;     :
PRO PARK AMERICA WEST, LLC;    :
PRO PARK AMERICA NEW YORK,     :
LLC; PRO PARK EXECUTIVE        :
MANAGEMENT COMPANY, LLC;       :
CLEAR CHANNEL ENTERTAINMENT;   :
and JIM KOPLIK,                :
                               :
          Defendants.          :
-------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Matthew Goldsich ("Goldsich") brings this action against Clear Channel Entertainment, Inc. ("Clear Channel") and Jim Koplik ("Koplik"), alleging negligence and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA"), in Count Twelve and Count Thirteen, respectively, of the Second Amended Complaint. Clear Channel and Koplik have moved for summary judgment on both of these counts. For the reasons set forth below, their motion is being granted.

**I.    FACTUAL BACKGROUND**

On July 17, 2004, the Dave Mathews Band was scheduled to perform a concert at the Meadows Music Theater (the "Meadows")

-1-

in Hartford, Connecticut. At approximately 4:00 p.m., Goldsich arrived at a parking lot located at 89 Weston Street in Hartford, just north of the Meadows. Goldsich did not have a ticket to the concert. At approximately 5:00 p.m., a fight broke out in the parking lot. Shortly thereafter, private duty Hartford police officers arrived at the lot. While he was in the lot, Goldsich was allegedly injured in the right eye by Officer Luis Poma ("Poma").

Clear Channel and Koplik were promoters for the concert at the Meadows on July 17, 2004. In order to hold the concert at the Meadows, they were required to cooperate with the City of Hartford and to hire Hartford police officers to work traffic control and private-duty security for the concert. The operations plan for traffic control and security was developed by the Hartford Police Department. As part of the operations plan, the Hartford Police Department determined the number of officers needed for security, the particular officers who would work, the locations where the officers would be stationed, their hours on duty, and their compensation.

In addition, the Pro Park defendants ("Pro Park"),[1] which managed the parking lot at 89 Weston Street, hired off-duty Hartford police officers to provide security at the lot on July

---

[1] Pro Park, Inc.; Pro Park Group, LLC; Pro Park America West, LLC; Pro Park America New York, LLC; and Pro Park Executive Management Company, LLC.

17, 2004 under a separate contract between Pro Park and the City of Hartford. Officer Poma, who allegedly injured Goldsich, was one of the Hartford police officers hired by Pro Park to provide security at the lot. Clear Channel and Jim Koplick did not own, lease, or hold a possessory interest in the lot at 89 Weston Street. The lot was owned by Weston Development, LLC ("Weston"). Also, Clear Channel and Koplik did not have an agreement with Weston or Pro Park to provide security at the lot.

**II. LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore,

may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it

-4-

is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil,

Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. See Anderson, 477 U.S. at 248,

251.

## III. DISCUSSION

### A.   Count Twelve: Negligence

Clear Channel and Koplik move for summary judgment on the plaintiff's negligence claim on the ground that they did owe a duty of care to the plaintiff.[2]  The Connecticut Supreme Court has stated:

> The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care . . . [T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what

---

[2] In Count Twelve, the plaintiff alleges that his injuries were caused by the negligence of Clear Channel and Jim Koplik in that they permitted patrons to park in area parking lots without regard to whether they had a ticket to attend the concert; failed to control the number of people who could park in area parking lots; failed to develop a security plan that would adequately ensure public safety; failed to provide proper and adequate security; failed to use reasonable care in the selection of safety personnel; failed to use reasonable care in the training of security personnel; failed to coordinate security operations; failed to adequately assign security personnel to the area parking lots; failed to implement and/or take reasonable precautionary measures to control the known behavior associated with this concert crowd; knew or should have known of the parking lot partying and failed to take measures to limit, remedy, and correct the same; failed to require that any use of "less lethal force" by their private police personnel complied with generally accepted practices and usages for such weaponry under the conditions then and there existing.  (Second Am. Compl. (Doc. No. 80) ¶ 136).

-7-

the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case . . .

With respect to the second inquiry, namely, the policy analysis, there generally is no duty that obligates one party to aid or to protect another party . . . One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or to protect another . . . In delineating more precisely the parameters of this limited exception to the general rule, this court has concluded that, [in the absence of] a <u>special relationship of custody or control</u>, there is no duty to protect a third person from the conduct of another . . .

<u>Ryan Transportation, Inc. v. M & G Associates</u>, 266 Conn. 520, 525-26 (2003) (citations omitted; internal quotation marks omitted; emphasis in original). Assuming <u>arguendo</u> that the harm suffered by the plaintiff was foreseeable, the court concludes that imposing a duty of care on Clear Channel and Koplik under the circumstances of this case would be inconsistent with public policy.

The evidence establishes that Clear Channel and Koplik did not have ownership, possession, or sufficient control over the parking lot at 89 Weston Street where the plaintiff was injured such that it would be appropriate to impose upon them a legal duty of care to the plaintiff.[3] See <u>Panaroni v. Johnson</u>, 158

---

[3] The plaintiff concedes that Clear Channel and Koplik did not have an ownership or possessory interest in the lot on 89

-8-

Conn. 92, 98 (1969) ("The word 'control' . . . refers to the power or authority to manage, superintend, direct, and oversee."). Rather, the evidence establishes that the lot was owned by Weston and managed by Pro Park. Although Clear Channel and Koplik entered into a contract with the city to hire off-duty Hartford police officers to provide security at the concert and some of the surrounding areas, Pro Park hired the off-duty police officers to provide security at the parking lot where Goldsich was injured. Moreover, the evidence shows that Goldsich was a patron of that parking lot, not of the concert itself.

Relying on the Connecticut Supreme Court's decision in <u>Monk v. Temple George Associates, LLC</u>, 273 Conn. 108, 114 (2005), the plaintiff argues that Clear Channel and Koplik owed a legal duty of care to Goldsich. In <u>Monk</u>, the court held that the owner and operator of a parking lot owed a legal duty of care to a nightclub patron who was assaulted in the lot where she had parked her car. Goldsich argues that the same considerations which led the court to conclude that the defendants in <u>Monk</u> owed

---

Weston Street but denies that the lot was not "controlled" by Clear Channel and Koplik, noting that Randy McArthur, general manager of Clear Channel, testified in his deposition that Clear Channel "ran" the lot from 1998 through 2003. However, the plaintiff has not produced any evidence to suggest that Clear Channel exercised control over the lot on July 17, 2004, the date when the incident took place.

a legal duty of care also apply in this case.[4]  However, the court repeatedly mentioned that it was evaluating these considerations with respect to "lot owners" and "premises owner[s] or operator[s]."  See Monk, 273 Conn. at 118-120. Goldsich argues that Clear Channel and Koplik are not immune from liability simply because they did not own or operate the parking lot because the court in Monk "[did] not consider attacks perpetrated in the vicinity of one's premises to be significantly different for the purposes of foreseeability than attacks committed directly on one's premises, other things being equal."  Id. at 121, n. 11.  However, the court in Monk was merely stating that attacks occurring in the immediate vicinity of the premises of an owner or operator could alert that owner or operator to the fact that an attack on their premises was foreseeable.  It was not stating that owners or operators could be held liable for attacks occurring in the vicinity of their premises.  Nor was the court stating that persons or entities could be held liable for attacks occurring on premises owned or operated by others.

---

[4] The court noted that "[i]n considering whether public policy suggests the imposition of a duty, we ... consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions."  Monk, 273 Conn. at 118 (internal citations and quotation marks omitted).

Goldsich also argues that Clear Channel and Koplik owed a legal duty to the plaintiff because they were involved in the planning of security measures for the concert venue and the surrounding areas.  Goldsich notes that the concert promoters met with Hartford police to devise and discuss the operations plan for the day of the concert; that a copy of the operations plan was sent to Clear Channel personnel; that Clear Channel paid for many of the off-duty police officers to provide security on that day; that the police detail roster indicates "authorization" by Randy McArthur, the general manager for Clear Channel; that the command post for the police operation was located on the lot at 89 Weston Street; and that the Disorder Control Team, of which Officer Poma was a member, was located at that lot.  However, despite Clear Channel and Koplik being involved in general security planning measures for the event and hiring many of the police officers who provided security services, the evidence indicates that Clear Channel and Koplik had no control over the management of the parking lot in which the plaintiff was injured or over police operations at that lot. It is undisputed that officers who worked at the lot on the day of the concert were hired by Pro Park pursuant to a contract between the City of Hartford and Pro Park.  Under these circumstances, Clear Channel and Koplik owed no duty of care to a patron of that parking lot who never purchased a ticket to the

concert. See, e.g., Kolodziej v. Durham Agricultural Fair Ass'n, Inc., 901 A.2d 1242, 1246 (Conn.App. 2006) (holding that agricultural fair association did not owe fairgoer, who was struck and killed while walking along an adjacent public highway after leaving the fair, a duty of care arising out of an allegedly deficient traffic safety plan for the fair because the undisputed evidence established that the implementation of the plan "rested exclusively with the town's board of selectmen, and thus outside the defendant's legal authority or capacity."). Therefore, the motion for summary judgment on the plaintiff's negligence claim is being granted. See RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384-385, 650 A.2d 153, 155 (1994) ("If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant.").

### B. Count Thirteen: Connecticut Unfair Trade Practices Act (CUTPA)

Clear Channel and Koplik move for summary judgment on the plaintiff's CUTPA claim on the ground that Goldsich does not fall within the class of persons that CUTPA is intended to protect.[5] In order to prevail on a CUTPA claim, the plaintiff

---

[5] Goldsich alleges in Count Thirteen that negligent acts of Clear Channel and Koplik constitute unfair or deceptive practices in violation of CUTPA in that they violate public policy, are immoral, unethical, or unscrupulous, and/or substantially injurious to consumers.

must establish that the conduct of the defendants resulted in a substantial injury to consumers, competitors, or other business persons.[6] See Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 496, 656 A.2d 1009 (1995) (citing McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 566, 567 (1984)) (concluding that "CUTPA imposes no requirement of a consumer relationship" and that "a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury."). Here, however, the evidence establishes that Goldsich was not a consumer of services provided by Clear Channel, a competitor of Clear Channel, or a businessperson affected by Clear Channel's conduct. Although Goldsich was a patron of a parking lot near the concert venue, he never purchased a ticket to the concert. Therefore, Goldsich does not fall within the class of persons

---

[6] To determine whether a practice is unfair or deceptive in violation of CUTPA, Connecticut courts consider the following factors:

> (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . .

Ventres v. Goodspeed Airport, LLC, 275 Conn. 105, 155 (2005) (citation omitted).

that CUTPA intended to protect.[7]  See, e.g., Rosenthal v. Ford Motor Co., Inc., 462 F.Supp.2d 296, 311-312 (D.Conn. 2006) (holding that a third party who received allegedly defective products as gifts from a consumer was not within the class of persons that CUTPA was intended to protect); Gersich v. Enterprise Rent A Car, 1995 WL 904917, at *5 (D.Conn. 1995) (holding that a person involved in a motor vehicle accident with a customer of Enterprise was not a consumer or competitor of Enterprise or other business person affected by Enterprise's conduct).  Thus, the motion for summary judgment on the plaintiff's CUTPA claim is also being granted.

## IV. CONCLUSION

For the reasons set forth above, Clear Channel Entertainment and Jim Koplik's Motion for Summary Judgment (Doc. No. 82) is hereby GRANTED.

The Clerk shall enter judgment for defendants Clear Channel and Koplik on Count Twelve and Count Thirteen of the Second Amended Complaint and terminate them as parties in this case.

---

[7] In his opposition to the motion for summary judgment, Goldsich states that he "believes" he is within the category of persons to whom CUTPA applies and that the materials submitted by the defendants are insufficient to demonstrate the absence of a genuine issue of material fact on this point.  In light of the fact that Goldsich did not purchase a ticket to the concert, and the absence of any evidence suggesting that he was a consumer, competitor, or other businessperson injured by Clear Channel and/or Koplik, Goldsich's conclusory assertion that he falls within the class of persons protected by CUTPA is insufficient to withstand summary judgment.

It is so ordered.

Dated this 16th day of August 2008 at Hartford, Connecticut

                                                /s/ AWT
                                       Alvin W. Thompson
                                United States District Judge